# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> BRYCE SAUNDERS KAPAYOU, <br><br> Defendant. | No. 23-CR-46-CJW-MAR <br><br> **SENTENCING OPINION** |

## I. INTRODUCTION

This matter came on for sentencing on January 8, 2024. (Doc. 32). The government moved for an upward departure under United States Sentencing Guidelines Section 4A1.3(a)(1), based on defendant's substantially under-represented criminal history. (Doc. 30). The Court found an upward departure was warranted on this ground. The Court files this sentencing opinion to explain its reasoning in writing to aid the parties and the Eighth Circuit Court of Appeals, should one of the parties appeal the sentence.

## II. RELEVANT BACKGROUND

On June 27, 2023, a grand jury charged defendant in a one-count indictment. (Doc. 2). Defendant was charged with domestic abuse assault within Indian country, in violation of Title 18, United States Code, Section 1151. (*Id.*).

In describing the offense conduct, defendant's presentence investigation report ("PSR") stated that on April 9, 2023, the Meskwaki Police Department received a phone call from Travis Davenport, stating Davenport was with A.J. at a hospital in Marshalltown, Iowa, and had transported A.J. to the hospital after A.J. arrived at Davenport's home with multiple facial injuries. (Doc. 28, at 3).

After receiving that phone call, officers went to the hospital and spoke with A.J. (*Id.*). Officers observed A.J. had two black eyes and injuries to her nose. (*Id.*). A.J. informed officers defendant kicked and punched A.J. in the face multiple times and that over the course of five days, defendant would not allow A.J. to leave the residence, carried a machete to threaten A.J., would strike furniture with that machete, and forced A.J. to imbibe multiple shots. (*Id.*). A.J.'s medical records provided A.J. had a "large contusion over her mid face," bruising and swelling to her face, and a CT scan showed A.J. had suffered "acute bilateral nasal bone fractures." (*Id.*). Though defendant and A.J. resided together at the time of the offense conduct, defendant and A.J. were then under a no-contact order. (*Id.*, at 3).

Later, officers executed a search warrant at defendant's residence. (*Id.*). Officers discovered an intoxicated defendant near his bed and the machete in question against a closet wall in that bedroom. (*Id.*). Officers also located two other, uncooperative individuals in the home, one of whom had an outstanding warrant. (*Id.*). Officers also located a glass mirror bearing methamphetamine residue in defendant's living room. (*Id.*).

On September 13, 2023, defendant pled guilty before the Honorable Mark A. Roberts, United States Magistrate Judge, to domestic abuse assault. (Docs. 20; 21; 22). On September 28, 2023, the Court formally accepted defendant's plea. (Doc. 23).

### III.   GOVERNMENT'S SENTENCING MOTION

For the following reasons, the Court granted the government's motion for upward departure.

The government argued an upward departure was appropriate under United States Sentencing Guidelines Section 4A1.3(a)(1) because defendant's criminal history is substantially under-represented by his criminal history category. (Doc. 30-1, at 5-9); USSG §4A1.3(a)(1). In support of the Section 4A1.3(a)(1) departure, the government asserted:

2

Defendant has 25 adult criminal convictions, none of which are scored because of the age of conviction or the nature of disposition. Defendant also has 25 unscored tribal convictions. Nearly all those convictions would otherwise qualify as countable convictions but are not scored because they are tribal convictions. Were they to be scored, defendant would have at least 20 criminal history points. 20 criminal history points equates to a criminal history category VI. *See United States v. Harlan*, 368 F.3d 870, 875 (8th Cir. 2004) (in determining the extent of an upward departure the district court was proper in applying the criminal history category applicable had the defendant's tribal convictions been scored.)[.]

Had defendant's tribal convictions been scored the number of criminal history points he would have far exceeds the 13 points necessary to be a criminal history category VI. *See United States v. Outlaw*, 720 F.3d 990, 993 (8th Cir. 2013) (affirming upward departure under §4A1.3 where "the district court found that a category VI criminal history under-represented [the defendant's] criminal history," considering that "Category VI requires a minimum of 13 criminal history points," and the defendant's "23 points far exceeded this minimum"); *United States v. Thompson*, 641 F. App'x 641, 648 (8th Cir. 2016) (affirming upward departure under §4A1.3 where "the district court noted that [the defendant] had accumulated 20 criminal history points and that only 13 were needed for him to have a criminal history category of VI.").

Given the number of unscored criminal convictions and the serious nature of many of those convictions, criminal history category VI does not sufficiently account for the seriousness of defendant's criminal history. In cases where a defendant is a criminal history category VI but category VI under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, "the court should structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case." USSG §4A1.3(a)(4)(B). "When deciding whether to depart based on the inadequacy of a category VI criminal history, 'the court should consider that the nature of the prior offenses rather than simply their number is often more indicative of the seriousness of the defendant's criminal record.'" *United States v. King*, 627 F.3d 321, 323 (8th Cir. 2010) (quoting USSG §4A1.3, cmt. (n.2(B))). An upward departure is also appropriate because defendant's criminal history indicates that he is at an extremely high risk to recidivate. *See United States v. Gonzalez*, 573 F.3d 600, 606 (8th Cir. 2009) ("A defendant's

3

recidivism is a reasonable basis for applying an upward departure."); *United States v. Walking Eagle*, 553 F.3d 654, 657 (8th Cir. 2009) (holding that in determining whether an upward departure is appropriate, the Court can consider evidence defendant is a recidivist whose criminal history shows "obvious incorrigibility"); *United States v. Schwalk*, 412 F.3d 929, 934 (8th Cir. 2005) (affirming upward departure under §4A1.3, concluding that "'even offenses which are minor and dissimilar to the instant crime may serve as evidence of likelihood of recidivism if they evince the defendant's incorrigibility.'") (quoting *United States v. Agee*, 333 F.3d 864, 867 (8th Cir. 2003)).

    An upward departure is further appropriate in this case because defendant's violent criminal past demonstrates a pattern of serious and dangerous criminal behavior. The Court may and should properly take this pattern of criminal activity into account in determining whether and how far to depart from the advisory guideline range. *See, e.g.*, *Outlaw*, 720 F.3d at 992-93 (approving an upward departure for a firearms offense because of the defendant's "many assault convictions" and a total of 23 criminal history points); *United States v. Porter*, 439 F.3d 845, 949-50 (8th Cir. 2006) (holding that a sentencing court may upward depart, pursuant to USSG §4A1.3, based on "the substantial likelihood a defendant will commit future crimes or his capacity for future violence.").

    Here, defendant has a total of 51 unscored criminal convictions. Many of defendant's criminal convictions show a history and pattern of violent conduct. His convictions include, but are not limited to, the following: six convictions for disorderly conduct, three convictions for resisting arrest, one conviction for eluding, one conviction for assault on a peace officer, eight convictions for assault, two convictions for domestic battery, one conviction for reckless driving, and one conviction for threatening a tribal official. (PSIR ¶¶ 22, 25, 33-34, 37, 42, 47-53, 56-59, 60-61, 64-65, 72.)[.] The likelihood defendant recommits a serious crime is incredibly high. 27 of his 51 criminal convictions occurred in the last five years which shows defendant's criminal conduct is not slowing down.

(Doc. 30-1, at 6-9 (footnotes omitted)).

    At the sentencing hearing, the government argued the Court should depart upward under Section 4A1.3, or in the alternative, vary upward, to at least 48 months' imprisonment. Specifically, the government advocated that in addition to departing from criminal history category I to category VI, the Court should, under Section

4

4A1.3(a)(4)(B), move incrementally from total offense level nine to some greater level because defendant's unscored criminal history, were it scorable, would far exceed the 13 points necessary to qualify as a criminal history category VI offender, rendering category VI inadequate here. The Court notes defendant did not dispute that some upward departure was reasonable here.

Based on the parties' arguments and the PSR, the Court found an upward departure appropriate under Section 4A1.3. The Court found that were defendant's tribal convictions scored, he would have 20 criminal history points, placing defendant in criminal history category VI. Because defendant's criminal history category failed to reflect the seriousness of his criminal history, which includes previous violent crimes including against A.J., or defendant's likelihood of recidivating, the Court moved from total offense level nine to offense level 11. Based on the PSR, the advisory guidelines range was 4 months' to 10 months' imprisonment. The Court departed upward to a range of 27 months' to 33 months' imprisonment.

## IV. CONCLUSION

For these reasons and for the reasons stated during the sentencing hearing, the Court granted the government's motion for an upward departure. The Court imposed a sentence of 31 months and 16 days imprisonment, crediting defendant for 44 days of time served for his tribal conviction.

**IT IS SO ORDERED** this 11th day of January, 2024.

_____
C.J. Williams
United States District Judge
Northern District of Iowa